# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2026

Lyle W. Cayce
Clerk

No. 25-50204

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JEREMY SCOTT ALLRED,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:24-CR-404-1

Before SOUTHWICK, GRAVES, and WILSON, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

Jeremy Scott Allred was convicted of violating 18 U.S.C. § 922(g)(9) by possessing a firearm following conviction of a misdemeanor crime of domestic violence. He argues that this provision exceeds Congress's authority under the Commerce Clause and, as applied to him, violates the Second Amendment. We disagree and AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Allred's predicate conviction was in a Texas state court for "Assault Causing Bodily Injury to a Family Member," a description that tracks Texas

Penal Code § 22.01(a)(1). A violation of this statute is classified as a Class A misdemeanor absent proof of aggravating circumstances. *See* Tex. Penal Code Ann. § 22.01(b) (2025). Allred committed that offense in 2004, at which time the statute forbade the same conduct it does today: "intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the [perpetrator]'s spouse." *Id.* § 22.01(a)(1) (2004, 2025).

The presentence report (PSR) described the predicate offense. Deputies responding to a report of domestic violence encountered a woman who said her husband, Allred, pushed her during their argument. The PSR summarizes: "When the victim [then] tried to call 911, the defendant attempted to knock the phone out of her hand. Instead of slapping the phone, the defendant struck the [victim] on the right side of her face. The defendant was placed under arrest."

Allred moved to dismiss the Section 922(g)(9) indictment. He argued that statute exceeds Congress's authority under the Commerce Clause and violates the Second Amendment. The district court denied the motion. Allred then pled guilty under a plea agreement that reserved his right to appeal the denial of his motion to dismiss. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Allred to 16 months' imprisonment and three years' supervised release. Allred timely appealed.

## DISCUSSION

Allred challenges the constitutionality of Section 922(g)(9) on two grounds. He raises a facial challenge, arguing the statute exceeds Congress's authority under the Commerce Clause. Allred concedes that this argument is foreclosed by *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013). *Alcantar* does not squarely foreclose Allred's claim, however, because that case examined Section 922(g)(1), not (g)(9). *Id.* at 144. Nonetheless, we

conclude that *Alcantar*'s reasoning applies equally to (g)(9) and therefore reject Allred's facial challenge.

Allred also raises an as-applied Second Amendment challenge, which he preserved in the district court and which we review *de novo*. *See United States v. Reyes*, 141 F.4th 682, 686 (5th Cir. 2025). This appears to be a matter of first impression in our circuit because neither party cites, and research has not revealed, any post-*Bruen* decision by this court addressing the constitutionality of Section 922(g)(9), either facially or as applied to a particular defendant. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

This statute prohibits the possession of firearms or ammunition by a person who "has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9); *see also* 18 U.S.C. § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence"). Allred contends that applying Section 922(g)(9) to him violates the Second Amendment because the Government cannot show a historical tradition of disarming someone with an analogous criminal history. A key argument is that his predicate Texas assault conviction could have been committed recklessly, meaning the offense does not demonstrate that he is a threat to public safety.

The Supreme Court in *Bruen* articulated the test for assessing Second Amendment challenges to firearm regulations. 597 U.S. at 24. The Court explained that the Constitution presumptively protects conduct covered by the Second Amendment's plain text. *Id.* To regulate such conduct, the Government "must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* The Court later applied this framework to uphold the constitutionality of 18 U.S.C. § 922(g)(8)(C)(i), which bars firearm possession by a person subject

to a domestic violence restraining order. *United States v. Rahimi*, 602 U.S. 680, 693–700 (2024). *Rahimi* deemed that statute relevantly similar to Founding-era surety and "going armed" laws applicable to individuals found to threaten the physical safety of others. *Id.* at 698. The Court concluded that a person "found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702.

Here, a central element of the criminalized conduct is violating a prohibition on possession of a firearm, making the plain text of the Second Amendment applicable. The Government thus bears the burden of showing that Section 922(g)(9) is consistent with our historical tradition of firearm regulation. *See Bruen*, 597 U.S. at 24. "Why and how the regulation burdens the right are central to this inquiry." *Rahimi*, 602 U.S. at 692. A historical-law analogue of the regulation at issue "must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how')." *United States v. Hembree*, 165 F.4th 909, 912 (5th Cir. 2026) (quotation omitted).

First, the "why." "Domestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide." *United States v. Castleman*, 572 U.S. 157, 160 (2014). "Recognizing that firearms and domestic strife are a potentially deadly combination, Congress forbade the possession of firearms by anyone convicted of a misdemeanor crime of domestic violence." *Id.* at 159 (alteration adopted) (quotations omitted). Congress did so "to close a dangerous loophole in the gun control laws: While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors." *Id.* at 160 (alteration adopted) (quotation omitted). Based on *Bruen*, *Rahimi*, and this court's precedents, we conclude that Section 922(g)(9) as applied to Allred comports with the nation's

historical tradition of disarming people whom courts have found to threaten the physical safety of others.

*Rahimi*, in upholding the disarmament of people subject to domestic violence restraining orders, relied on Founding-era surety and "going armed" laws that "target[ed] individuals who physically threatened others." 602 U.S. at 694–97. Surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Id.* at 695. Such laws "targeted the misuse of firearms" and "could be invoked to prevent all forms of violence, including spousal abuse." *Id.* at 695–96. Going armed laws prohibited, on penalty of imprisonment, "riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land." *Id.* at 681–82, 697 (alterations in original) (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 149 (10th ed. 1787)).

"Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Although *Rahimi* only addressed Section 922(g)(8)(C)(i), its reasoning applies here and supports the conclusion that (g)(9) is constitutional as applied to Allred. Like (g)(8)(C)(i), (g)(9) is analogous to surety and going armed laws because it targets individuals who physically threaten others, including by threatening or committing spousal abuse.

In addition to adopting surety and going armed laws, some "American colonies . . . empowered officials to 'take from such Persons as they shall judge disaffected and dangerous to the present Government, all the Arms, Accoutrements and Ammunition which they own or possess.'" *United States v. Kimble*, 142 F.4th 308, 316 (5th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 564 (2026) (quoting An Act for Constituting a Council of Safety (Sept. 20,

1777), 1777 N.J. Laws ch. 40, § 20, p. 90); *see also United States v. Williams*, 113 F.4th 637, 654 (6th Cir. 2024) (citing the same statute and concluding that "[c]olonial governments frequently deemed entire groups too dangerous to possess weapons"). "Class-wide disarmament accords with both history and precedent. Governments in England and colonial America long disarmed groups that they deemed to be dangerous." *Kimble*, 142 F.4th at 315 (alteration adopted) (quotation omitted). Indeed, "the undeniable throughline in our nation's history is that Founding-era governments took guns away from those perceived to be dangerous. Further, history and tradition support Congress's power to strip certain *groups* of the right to bear arms." *Id.* (quotations omitted). Section 922(g)(9) as applied to Allred fits within this historical tradition.

That holding regarding Section 922(g)(9) is consistent with this court's caselaw. *Kimble* upheld Section 922(g)(1), which prohibits firearm possession by felons, against an as-applied challenge by a defendant convicted of drug trafficking. *Id.* at 317. Considering the nation's historical tradition, we explained that the "Second Amendment allows Congress to disarm classes of people it reasonably deems dangerous," and that "drug trafficking is an inherently dangerous activity." *Id.* at 314–15, 317. We concluded that the defendant's (g)(1) conviction was "consistent with this Nation's historical tradition of firearm regulation and punishment of people who have been convicted of violent offenses." *Id.* at 317 (quotation omitted). In another case, we rejected an as-applied challenge to Section 922(g)(1) by a defendant convicted of aggravated battery. *United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025). We reasoned that the defendant's conviction there "indicates that he poses a threat to public safety and the orderly functioning of society." *Id.*

Here, Allred has been convicted of a crime of domestic violence involving intentionally, knowingly, or recklessly causing bodily injury to

another person. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (2004). We conclude that such conduct "is an inherently dangerous activity." *Kimble*, 142 F.4th at 317. Like the defendants in *Kimble* and *Schnur*, Allred has a conviction that Congress has deemed, consistently with historical tradition, to demonstrate a person is "too dangerous to trust with weapons." *Kimble*, 142 F.4th at 316. Section 922(g)(9)'s "why" — the rationale behind its burden on the right to bear arms — therefore "comport[s] with the principles underlying the Second Amendment." *Rahimi*, 602 U.S. at 692.

Next, we address the "how" — whether the burden Section 922(g)(9) places on Allred's right to bear arms is comparable to historical analogues. Here, too, the surety and going armed laws discussed by *Rahimi* are relevant. It is true that Section 922(g)(9) differs from Section 922(g)(8)(C)(i), at issue in *Rahimi*, because Section 922(g)(9) does not demand a specific, predictive finding by a court that the defendant represents a credible threat to the physical safety of another person. *See* 602 U.S. at 698–99. Nevertheless, a court convicted Allred of intentionally, knowingly, or recklessly causing bodily injury to his wife. *See* TEX. PENAL CODE ANN. § 22.01(a) (2004). That "judicial determination[]" regarding the physical threat Allred posed resembles the determination that Section 922(g)(8)(C)(i) requires, which the *Rahimi* Court concluded "matches the surety and going armed laws['] judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." 602 U.S. at 698–99.

Allred correctly notes that the surety and going armed laws only led to temporary restrictions on rights, whereas Section 922(g)(9) disarms individuals indefinitely. The Government, though, needs only to provide a "historical analogue" — "a historical *twin* is not required." *Id.* at 701 (quotations omitted). The previously discussed historical analogues satisfy that condition because they imposed serious penalties, such as imprisonment, only after judicial determinations, making them "relevantly

similar" to Section 922(g)(9). *Id.* at 698 (quotation omitted). In any event, Section 922(g)(9)'s prohibition is not necessarily permanent either. A domestic violence misdemeanant may be exempted "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(33)(B)(ii) (2024).

The Supreme Court considered this statute in a case addressing what qualifies as a "misdemeanor crime of domestic violence." *Voisine v. United States*, 579 U.S. 686, 688 (2016). The Court held that Section 922(g)(9) not only includes assaults involving the knowing or intentional use of force but also those committed recklessly. *Id.* Allred correctly underscores that *Voisine* only interpreted statutory law and did not address any constitutional issue. *See* 579 U.S. at 688, 698 n.6.

Relying on JUSTICE THOMAS's *Voisine* dissent, Allred contends that disarmament based on merely reckless conduct violates the Second Amendment. *See id.* at 713–16 (THOMAS, J., dissenting).[1] Of course, dissents do not control; majorities do. Even so, the concern expressed by JUSTICE THOMAS does not exist here in the context of Allred's as-applied challenge. That dissent asserted that by reading the statute to sweep in "crimes involving purely reckless conduct," the majority's interpretation "creates serious constitutional problems." *Id.* at 713, 716. Allred's conduct is not the type that JUSTICE THOMAS deemed the majority's reading improperly to include. Even a narrower interpretation of Section 922(g)(9) would reach Allred's situation.

---

[1] JUSTICE SOTOMAYOR joined the parts of JUSTICE THOMAS's dissent interpreting (g)(9), but not the part (on which Allred's argument relies) regarding the constitutional problems with the majority's reading.

JUSTICE THOMAS stated that he "part[ed] ways with the majority's conclusion that purely reckless conduct — meaning, where a person recklessly creates force — constitutes a 'use of physical force'" under Section 922(g)(9). *Id.* at 704. He gave two examples. First: "Knowing that he should not be texting and driving, a father sends a text message to his wife. The distraction causes the father to rear end the car in front of him. His son, who is a passenger, is injured." *Id.* at 707. Second: "A police officer speeds to a crime scene without activating his emergency lights and siren and careens into another car in an intersection. That accident causes the police officer's car to strike another police officer, who was standing at the intersection." *Id.*

JUSTICE THOMAS agreed with the majority, though, that a "use of physical force" validly includes situations where a person "*intentionally* employed force, but *recklessly* caused physical injury with that force." *Id.* at 705. The majority provided two examples, which JUSTICE THOMAS approvingly reiterated: (1) a person throws a plate in anger at the wall near his wife, shattering the plate, and a shard injures her; (2) a person slams shut a door, and his girlfriend, following closely behind, is injured when her fingers are caught in the doorframe. *Id.* at 693 (majority); *id.* at 705 (dissent).

Allred's conduct closely resembles these latter two scenarios. He intentionally employed force by swinging at his wife's phone while she was calling the police, but he recklessly caused physical injury to her with that force. Allred's intentional creation of force distinguishes his situation from the earlier two examples of the text-messaging father and the police officer. Thus, JUSTICE THOMAS's dissent does not provide support for Allred's as-applied challenge to Section 922(g)(9). Neither the majority nor the dissent identified a constitutional problem with the disarmament of a domestic violence misdemeanant who intentionally creates force that recklessly causes injury.

Returning to the *Bruen* analysis, Allred argues that even if conviction for an offense involving mere recklessness could constitutionally justify disarmament, it would not do so here because the conduct underlying Allred's assault conviction fails to show he poses a threat to others. In the Section 922(g)(1) context, we recently reiterated that it is proper to take "a felony-by-felony approach by assessing, as a categorical matter, whether there [is] a sufficient historical analogue for any of the particular offenses of which [the defendant has] been convicted." *Hembree*, 165 F.4th at 912. We find the same approach to be appropriate here. We do not rely on the specific circumstances underlying Allred's predicate conviction in reaching our decision that applying Section 922(g)(9) to Allred is consistent with this nation's historical tradition of firearm regulation. Rather, we base our conclusion on the fact that Allred has been convicted of a crime qualifying as a "misdemeanor crime of domestic violence," which Congress has, consistently with historical tradition, deemed to indicate he is too dangerous to trust with firearms. *See* 18 U.S.C. § 922(g)(9); 18 U.S.C. § 921(a)(33)(A).

We therefore hold that Section 922(g)(9) is constitutional as applied to Allred. In doing so, we join every other circuit that has considered Section 922(g)(9)'s constitutionality. *See United States v. Martinez*, 169 F.4th 1147, 1157 (9th Cir. 2026); *United States v. Simmons*, 150 F.4th 126, 132 (2d Cir. 2025); *United States v. Jackson*, 138 F.4th 1244, 1253–55 (10th Cir. 2025); *United States v. Nutter*, 137 F.4th 224, 231–32 (4th Cir.), *cert. denied*, 146 S. Ct. 270 (2025); *United States v. Bernard*, 136 F.4th 762, 765–66 (8th Cir.), *cert. denied*, 146 S. Ct. 254 (2025); *United States v. Gailes*, 118 F.4th 822, 827–28 (6th Cir. 2024).

AFFIRMED.

No. 25-50204

James E. Graves, Jr., *Circuit Judge*, concurring in the judgment.

I agree with the majority that Allred's conviction should be affirmed based on the circumstances of his criminal history. But, as I explained in *United States v. Kimble*, we should conduct an individualized assessment of a defendant's history and conduct when deciding an as-applied challenge. 142 F.4th 308, 318–22 (5th Cir. 2025) (Graves, J., concurring in part and in the judgment). The *Kimble* court wrongly rejected consideration of a defendant's history and characteristics for as-applied challenges to 18 U.S.C. § 922(g)(1). *Id.* at 318. Today, the majority does the same for challenges to § 922(g)(9). So, I respectfully concur in part and in the judgment.

## I.

At the outset, I note the tension in caselaw among our sister circuits generally and among cases in this circuit specifically.

"There is already a robust circuit split" regarding how courts should consider as-applied challenges to § 922(g)(1). *United States v. Mancilla*, 155 F.4th 449, 454 n.5 (5th Cir. 2025) (Elrod, C.J., concurring) (per curiam) (collecting cases). The majority takes the same categorical, "felony-by-felony" approach announced in *Kimble* to as-applied challenges to § 922(g)(9). It thus eschews the individualized approach used by other circuits considering similar challenges to § 922(g)(1), such as the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024). But other circuits have considered, or at least left open the possibility of considering, a defendant's individual circumstances when analyzing as-applied challenges to § 922(g)(9). *See, e.g.*, *United States v. Martin*, No. 24-3750, 2025 WL 1913185, at *3 (6th Cir. July 11, 2025) (applying individualized assessment for an as-applied challenge to § 922(g)(9)); *United States v. Simmons*, 150 F.4th 126, 131 (2d Cir. 2025) (allowing the possibility for an individualized assessment in a future as-applied challenge to

§ 922(g)(9) because defendant at bar "offer[ed] no basis to distinguish himself from other domestic violence misdemeanants for purposes of assessing the constitutionality of the statute"); *United States v. Jacobs*, 166 F.4th 395, 400 (4th Cir. 2026) (remanding an as-applied challenge to § 922(g)(9) for the district court to consider the "circumstances of [defendant's] prior domestic violence misdemeanor conviction").

Our circuit's own caselaw is a muddled patchwork of approaches to these types of as-applied challenges. In *United States v. Reyes*, we considered a defendant's criminal history when deciding his challenge to § 922(g)(1). 141 F.4th 682, 686–87 (5th Cir. 2025). Similarly, in *United States v. Betancourt*, we cited *Williams* when considering the details of the defendant's predicate offense. 139 F.4th 480, 483–84 (5th Cir. 2025) (citing *Williams*, 113 F.4th at 659). And in *United States v. Giglio*, we noted that "we must factor in the particularities of an individual's circumstances when adjudicating as-applied challenges." 126 F.4th 1039, 1045 (5th Cir. 2025).

Despite these binding, precedential cases, *Kimble* subsequently rejected this approach. 142 F.4th at 318.

Nevertheless, after *Kimble*, some panels have still made individualized assessments of the defendants, while others have not.[1] For example, in *United States v. Alaniz*, we embraced the view of the Third and Sixth Circuits and "consider[ed] [the] defendant's entire criminal record." 146 F.4th 1240, 1241–42 (5th Cir. 2025) (per curiam) (citation modified) (first citing *Pitsilides v. Barr*, 128 F.4th 203, 211 (3d Cir. 2025); and then quoting *Williams*, 113 F.4th at 660). And in *United States v. Morgan*, we considered "the conduct forming the basis of his conviction." 47 F.4th 522, 528 (5th Cir. 2025).

---

[1] Indeed, the majority here considers the particularities of Allred's conduct when rejecting his argument under *United States v. Voisine*, 579 U.S. 686 (2016).

No. 25-50204

But another panel of our court then rejected individualized assessments, concluding that *Kimble* controlled. *Mancilla*, 155 F.4th at 451–52 n.1. Other panels have also embraced *Kimble* while seemingly ignoring *Reyes*, *Betancourt*, *Alaniz*, and others. *See, e.g.*, *United States v. Hernandez*, 159 F.4th 425, 428 (5th Cir. 2025) (per curiam) (applying *Kimble*); *United States v. Cockerham*, 162 F.4th 500, 507 (5th Cir. 2025) (same); *United States v. Hembree*, 165 F.4th 909, 911–12 (5th Cir. 2026) (same).

As I have said before, these cases violated the rule of orderliness. *See Mancilla*, 155 F.4th at 455 (GRAVES, J., dissenting); *see also United States v. Cordova*, 176 F.4th 381, 388 (5th Cir. 2026) (OLDHAM, J., concurring in the judgment). So, the earlier, pre-*Kimble* decisions, which considered individualized assessments of the defendants, still control. *See Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023) (noting that when two panel decisions conflict, the earlier decision controls).

But this points to a larger problem. When panels of our court so cavalierly disregard other panels' decisions, we severely impair the ability of district courts, attorneys, and defendants—with their liberty on the line—to understand and apply precedent. While I recognize that this area of law has quickly evolved post-*Bruen*, that does not give us carte blanche to haphazardly decide which precedents to apply and which to ignore.

Our circuit precedent calls for us to make individualized assessments when deciding as-applied challenges to § 922(g)(1). We should apply that same framework to challenges to § 922(g)(9).

## II.

Individualized assessments would also more faithfully implement the Supreme Court's decision in *Bruen* and ensure that people who do not pose a danger to society are not lumped in with others simply because they were convicted under the same statute.

13

I will not dwell long on why we should make individualized assessments when deciding as-applied challenges, apart from following precedent, because it has been adequately discussed elsewhere. *See, e.g.*, *Kimble*, 142 F.4th at 321–22 (Graves, J., concurring in part and in the judgment); *Williams*, 113 F.4th at 660–61; *Pitsilides*, 128 F.4th at 213. Suffice to say that failing to do so creates a danger that people who have been convicted under the same statute, even if the conduct underpinning that conviction is wildly different, would be "paint[ed] with" the same "broad brush." *See Pitsilides*, 128 F.4th at 213; *see also United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024) (noting that the Second Amendment does not allow disarming for only "habitual or occasional drug use").

Conducting individualized assessments allows courts to more carefully apply the analogical reasoning set forth in *Bruen* and *Rahimi*. Without it, our decisions can stray far afield from the historical analogues that support them. And so non-dangerous offenders can be disarmed with little regard to any historical justification that fits with their specific circumstances. There is no justification for neglecting this evidence, especially when doing so could create such glaring disparities. *See Kimble*, 142 F.4th at 322 (Graves, J., concurring in part and in the judgment).

## III.

The rule the majority adopts today analyzes a defendant's dangerousness not by their conduct but by the terms of the statute they were convicted under. This reasoning ultimately finds no basis in law and fails constitutional muster. I cannot join them in further extending this rule, so I respectfully concur only in the judgment.